**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| PROJECT FOR PRIVACY AND SURVEILLANCE ACCOUNTABILITY, INC., | : : : : | | |
| Plaintiff, | : : | Civil Action No.: | 22-1812 (RC) |
| v. | : : | Re Document No.: | 57 |
| NATIONAL SECURITY AGENCY, *et al.*, | : : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

**I.  INTRODUCTION**

Plaintiff Project for Privacy and Surveillance Accountability, Inc. (the "Project") brought this action against four federal agencies from whom it requested records: (i) the National Security Agency (NSA), (ii) the Central Intelligence Agency (CIA), (iii) the Office of the Director of National Intelligence (ODNI), and (iv) the Department of Justice (DOJ) (collectively, "Defendants").[1] The Project alleged that Defendants violated the Freedom of Information Act ("FOIA"), which requires agencies to release records upon request by any member of the public, subject to certain exemptions and exclusions. 5 U.S.C. § 552(a)(3); *see also* § 552(b)(1)-(9) (exemptions); *id*. § 552(c)(1)-(3) (exclusions).

Relevant here, this Court previously denied in part Defendants' motion for summary judgment. In its opinion, the Court interpreted the Project's FOIA requests as seeking both "operational" and "policy documents" regarding congresspeople specifically named in the

---

[1] The Federal Bureau of Investigation ("FBI"), the National Security Division ("NSD"), and the Office of Information Policy ("OIP") are component offices of the DOJ.

requests. The Court found that for "policy documents," Defendants had not shown that a FOIA *Glomar* assertion was appropriate. Thus, Defendants could not refuse to search for such documents by issuing a *Glomar* response, and the Court ordered Defendants to search for records in order to make an assessment of an appropriate response. Now, Defendants ask this Court to reconsider that prior decision based on a purported intervening change in the law. For the reasons stated below, the Court denies Defendants' motion for reconsideration.

## II.  BACKGROUND[2]

The Project sought records from Defendants concerning the intelligence community's acquisition or use of commercially available information regarding specific current and former members of Congress. Am. Compl. ("Compl."), ECF No. 23, ¶¶ 1, 11. Specifically, each of the Project's FOIA requests sought:

> All documents, reports, memoranda, or communications regarding the obtaining, by any element of the intelligence community from a third party in exchange for anything of value, of any covered customer or subscriber record or any illegitimately obtained information regarding [145 specifically-named current and former members of Congress].

*Id*. ¶¶ 12-13.

Rather than conduct a search for responsive records, Defendants responded to the Project's FOIA requests by issuing *Glomar* responses, that is, statements in which they refused to confirm or deny the existence of the records sought. *See, e.g*., Compl., Ex. U, ECF No. 23-3. In support of their *Glomar* responses, Defendants cited FOIA Exemption 1 and, to varying extents, Exemptions 3, 6, 7(C), and 7(E). *See generally* Defs.' Mot. Summ. J. at 6-7, ECF No. 26. The Project then brought suit in this Court to compel Defendatnts to conduct a search for

---

[2] The Court presumes familiarity with the underlying facts and law, which are described in the Court's prior memorandum opinion. *See Project for Priv. & Surveillance Accountability, Inc. v. Nat'l Sec. Agency*, No. CV 22-1812, 2024 WL 68244, at *1 (D.D.C. Jan. 5, 2024) ("Mem. Op"). What follows is a high-level overview.

responsive records. Compl. ¶ 1. Defendants later moved for summary judgment on the ground that their respective *Glomar* responses were adequately justified under FOIA. *See, e.g.*, Defs.' Mot. Summ. J. at 10. The Project cross-moved for summary judgment. Pl.'s Cross-Mot. Summ. J., ECF No. 29. The Court granted in part and denied in part Defendants' motion and denied Plaintiff's cross-motion. *See generally* Mem. Op.

The Court found that Defendants' *Glomar* responses were largely justified and affirmed the agencies' refusal to acknowledge the existence of many of the records that fell within the scope of the Project's FOIA requests. *Id.* at 9-17. The Court also found, however, that the Project's FOIA requests encompassed a category of documents whose existence (or lack thereof) could not be shielded by the various exemptions cited by Defendants. *Id.* at 18-21. This category, known as "policy documents," included records that discussed the intelligence community's potential collection of commercially available information on the listed congresspeople as a matter of legislative interest, policy, or oversight. *Id.* Because Defendants had not plausibly explained why Exemptions 1 and 3 prohibited them from acknowledging the existence of "policy documents," Defendants were ordered to conduct a search for those documents. *Id.* at 21.

After the Court's decision, several developments occurred. First, the FBI and ODNI completed their searches and reported that they found no responsive records. Joint Status Report, ECF No. 56. Second, OIP and NSD identified potentially responsive materials during their searches, which were being reviewed. *Id.* Third, the CIA located a large volume of potentially responsive records and indicated that it would be conducting a new search using more refined search terms. *Id.* Finally, the NSA indicated that its search was still in progress. *Id.*

Now, Defendants have moved for reconsideration under Federal Rule of Civil Procedure 54(b). Defs.' Mot. Recons., ECF No. 57. They contend that the D.C. Circuit's recent decision in

3

*Project for Priv. & Surveillance Accountability, Inc. v. U.S. Dep't of Just.*, 143 F.4th 506 (D.C. Cir. 2025) ("*PPSA*"), establishes that this Court's reasoning for denying Defendants' motion for summary judgment as to "policy documents" was in error. *Id*. Defendants had previously sought to stay the proceedings pending the D.C. Circuit's disposition of *PPSA*, but this Court denied Defendants' motion. Defs.' Mot. Stay, ECF No. 45; Min. Order, ECF No. 48 (denying Defs.' Mot. Stay). Defendants continue to maintain that *PPSA* is a "closely analogous decision" which warrants this Court's reconsideration. Defs.' Mot. Recons. at 3. Defendants have since stopped their search and review of potentially responsive documents pending this Court's resolution of their motion for reconsideration. Joint Status Report.

### III.  LEGAL STANDARD

The Court has broad discretion to hear a motion for reconsideration brought under Federal Rule of Civil Procedure 54(b), which "allows a court to reconsider its interlocutory decisions 'at any time' prior to a final judgment." *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008) (quoting *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C. 2003)). "[R]econsideration is appropriate 'as justice requires.'" *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014) (citation modified) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539. "Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Isse*, 544 F. Supp. 2d at 29.

## IV.  ANALYSIS

Defendants ask the Court to reconsider its determination that the Project's FOIA requests encompassed policy documents concerning specific congresspeople and that such documents, therefore, could not be shielded by the various FOIA exemptions cited by Defendants. Defs.' Mot. for Recons. at 3. According to Defendants, a controlling or significant change in the law has purportedly occurred since the Court issued its decision. *Id*. Specifically, Defendants contend that the D.C. Circuit's recent decision in *PPSA* demonstrates that the Court's reasoning was in error. *Id*. at 1–2. The Court disagrees. Reconsideration is unwarranted because *PPSA* is neither controlling nor does it constitute a significant change in the law for purposes of Defendants' motion.

### A.  *PPSA* Is Not Controlling.

The decision in *PPSA* does not control the outcome in this case. The Project advocated for a more expansive interpretation of its FOIA request in *PPSA* than the Project has argued here. *PPSA* addressed whether the Project's FOIA requests were written to include general policy documents. The requests sought "[a]ll documents, reports, memoranda, or communications regarding the [unmasking and upstreaming] . . . of any person [on the Project's list] from January 1, 2008, to January 15, 2020." *PPSA*, 143 F.4th at 509. There, the Project argued that this language was broad enough to encompass general policy documents that would fall outside the scope of a *Glomar* response, such as: "a hypothetical agency document titled, 'A Guide to Unmasking of Members of Congress,' 'correspondence regarding unmasking of members of Congress generally,' or 'a letter from a member of Congress informing the FBI that she contemplated enshrining' procedures to govern the dissemination of intelligence information referring to congressmembers or their staff by 'statute.'" *Id*. at 514 (citation modified) (quoting

5

the Project's appellate briefs). In other words, the Project sought to include policy documents in its FOIA request that did not specifically concern the named individuals listed in that request.

The D.C. Circuit rejected the Project's interpretation of the request. *Id.* at 514 ("That argument fails for the simple reason that the Project's FOIA requests do not seek any such generic policy documents."). Because the Project's request "was not broadly drawn" and "made a specific inquiry," *id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776–777 (D.C. Cir. 1984)), the Project's requests were, "by their own terms," limited to documents regarding the unmasking and upstreaming of named individuals during certain years, *id.* "Nothing more." *Id.* The D.C. Circuit thus declined to read the requests as seeking "information about other unlisted persons, let alone the entire Congress" due to the "pointedly focused language" contained in the requests. *Id.* at 515 (explaining that "the Project took the time to list by name each of the forty-eight individuals about whom it sought information—some in Congress and some no longer in Congress"). In short, the D.C. Circuit considered and rejected a distinct argument the Project did not raise here.

By contrast, this Court considered whether the Project's FOIA requests encompassed policy documents concerning the specifically named members of Congress and, if so, whether those documents fell outside the scope of Exemption 1 (classified national defense and foreign relations information) and Exemption 3 (information that is prohibited from disclosure by another federal law). The Court concluded that they did. Mem. Op. at 20–21. The Project's requests were broadly worded, as they sought "all documents, reports, memoranda, or communications regarding *the obtaining*, by . . . the intelligence community [of commercially available information] regarding" specific, named congresspeople. *Id.* at 20 (citation modified). This language was broad enough to encompass policy documents relating to those named

6

individuals, that is, "records that discuss the intelligence community's potential collection of commercially available information on the listed individuals as a matter of legislative interest, policy, or oversight." *Id*. at 9. This Court noted, for example, that such records could include "a letter from a member of Congress to the NSA inquiring as to whether the NSA had purchased commercially available information on any of the listed Senators or Congresspeople." *Id.* at 21. This hypothetical letter "would fall within the scope of [the Project's] request while simultaneously not revealing whether the NSA had, in fact, purchased such information or whether the NSA had a particular interest in surveilling the individual." *Id*. Because Defendants had not plausibly explained why Exemptions 1 and 3 prohibited Defendants from acknowledging the existence of these "policy documents," Defendants could not invoke a *Glomar* response. *Id*.

Unlike in *PPSA*, the Project here did not argue that its FOIA requests extended to general policy documents, that is, policy documents concerning *individuals not specifically listed in the requests*. That broader construction (rejected in *PPSA* by the D.C. Circuit) is thus not at issue in this case. Therefore, contrary to Defendants' assertion, the D.C. Circuit did not "reject[] the very argument advanced by the Project that this Court found persuasive in denying in part Defendant's summary judgment motion." Defs.' Reply at 2. Accordingly, *PPSA* does not control the outcome here.

### B.  *PPSA* Does Not Constitute a Significant Change in the Law.

Not only does *PPSA* not control, it also does not constitute a significant change in the law for purposes of Defendants' motion. Although the D.C. Circuit in *PPSA* factually distinguished a case this Court separately relied upon in reaching its earlier decision—*People for the Ethical Treatment of Animals v. Nat'l Institutes of Health, Dep't of Health & Hum. Servs*, 745 F.3d 535

(D.C. Cir. 2014) ("*PETA*")— the D.C. Circuit did not alter that precedent. *PPSA*, 143 F.4th at 515.

This Court cited *PETA* for the proposition that a category of responsive documents could exist that would not necessarily reveal information that would normally be entitled to a blanket *Glomar* response. Mem. Op. at 21. As noted above and relevant here, such documents could include "a letter from a member of Congress to the NSA inquiring as to whether the NSA had purchased commercially available information on any of the listed Senators or Congresspeople." *Id*. To reiterate, such a letter "would fall within the scope of [the Project's] request while simultaneously not revealing whether the NSA had, in fact, purchased such information or whether the NSA had a particular interest in surveilling the individual." *Id.* (citing *PETA*, 745 F.3d at 545) (explaining that the policy documents would fall outside the scope of Exemption 1 and 3). Under *PETA*, where such a category of documents exists, an agency cannot issue a blanket *Glomar* response, as such a response is available "only when 'the circumstances justify a *Glomar* response' for *all* categories of responsive records." *Id*. at 20 (quoting *PETA*, 745 F.3d at 541). Because such a category of documents existed here, this Court concluded that Defendants' "assertion of a blanket *Glomar* response . . . [could] not be sustained." *Id*. at 21 (quoting *PETA*, 745 F.3d at 545).

Conversely, the D.C. Circuit rejected the Project's reliance on *PETA* to construe the language of its request more broadly. *PPSA*, 143 F.4th at 514 ("The two FOIA requests and bases for *Glomar* responses are quite dissimilar."). The D.C. Circuit noted that the language at issue in *PETA* was broader, which supported reading the FOIA request there to broadly include documents beyond those related to specific researchers named in the requests. *Id*. at 515 ("As the [*PETA*] court recognized, that language would include not just investigations into the researchers

8

themselves, but any investigation into their employing institution and its own practices and procedures."). The D.C. Circuit also observed that *PETA* involved a different FOIA exemption than *PPSA*; the agency in *PETA* invoked Exemption 7(C) (law-enforcement records implicating personal privacy), while the agencies in *PPSA* relied on Exemption 1 (classified national defense and foreign-relations information). *Id*.

Nevertheless, the D.C. Circuit concluded that the FOIA requests in *PPSA* did not encompass general policy documents primarily because "the Project does not point to any language in its FOIA request that could be read to reach beyond its pointedly focused language," acknowledging that "while agencies have a duty to construe a FOIA request liberally, agencies are under no obligation to rewrite them." *Id.* (quoting *PETA*, 745 F.3d at 540); *see also id*. at 514 ("That [general-policy] argument fails for the simple reason that the Project's FOIA requests do not seek any such generic policy documents."). As the D.C. Circuit did not interpret the Project's request as encompassing "general policy documents," the Circuit did not address whether "general policy documents" fell outside the scope of a FOIA exemption. *See generally id*.

Because this Court relied on *PETA* for the proposition that a *Glomar* response may be invoked only where the circumstances justify its use for every category of responsive records, Mem. Op. at 21 (citing *PETA*, 745 F.3d at 545), *PPSA*'s distinguishment of *PETA* does not undermine the basis for this Court's reliance. Accordingly, *PPSA* does not warrant a different analysis or result in this case. *See Pinson v. U.S. Dept. of Jus*., 514 F. Supp. 3d 232, 241 (D.D.C. 2021) (explaining that reconsideration was appropriate where the D.C. Circuit recognized that the U.S. Supreme Court's ruling had "displaced" or "overtaken" several of the D.C. Circuit's prior precedents); *see also id*. (explaining that "additional guidance from the Supreme Court" materially altered the analysis of the court's prior decision, warranting reconsideration).

Consequently, no significant change in the law has occurred for purposes of Defendants' motion, and reconsideration is thus unwarranted.[3]

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration (ECF No. 57) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 27, 2026                                                              RUDOLPH CONTRERAS
                                                                                                         United States District Judge

---

[3] Plaintiff contends that Defendants' motion is moot as to those agencies that have completed their search for records. Pls.' Opp'n at 7. At a minimum, however, the parties agree that the motion is not moot as to agencies whose searches remain ongoing. *See* Pls.' Opp'n at 7; Defs.' Reply at 3. Because the Court concludes that reconsideration is unwarranted at least as to agencies with incomplete searches, it need not decide whether the motion is moot as to agencies that have completed their searches. *See Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C. Cir. 1991).